O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | Case No. CV 08-06408 DDP (RZx) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT** |
| v. | [Docket No. 144] |
| RAZMIK KHACHATOURIANS, individually and as a principal of LIGHTHOUSE INSURANCE MARKETING, and principal of PROLINKS INSURANCE SERVICES, INC.; CONRAD RIOS, an individual; EDUARDO LABINPUNO, et al., | |
| Defendants. | |

    Presently before the court is Defendant Bryan Manson's ("Defendant") Motion for Summary Judgment on Plaintiff/ Assignee National Financial Corp.'s ("Plaintiff") Second Amended Complaint ("SAC"). After reviewing the parties' moving papers, the court DENIES Defendant's Motion in its entirety.

**I.  Background**

    American General Life Insurance Company ("AGLIC") has assigned its claims against Defendant to Plaintiff. Defendant seeks summary judgment on Plaintiff's three claims against him: conspiracy t

commit fraud, aiding and abetting fraud, and fraud. (Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment ("Motion") at 1:12-22; SAC ¶¶ 130-44, 166-70.)[1] Defendant is a licensed California attorney, who was the in-house counsel for Prolinks. (Plaintiff/ Assignee National Financial Partners Corps Statement of Genuine Issues ("SGI") ¶¶ 4-5.) Prolinks is a corporation that submitted life insurance applications to AGLIC, through an intermediary agency. (SGI ¶¶ 7-8.) The policies resulting from several such applications are at issue in this case. (SGI ¶¶ 8, 10.) AGLIC allegedly required the agent issuing a life insurance policy to certify that the person paying for the policy was the insured, the insured's family, or the insured's employer. (See Klappa Decl.; Klappa Decl. Exs. A-D.) Such a certification was allegedly made for the policies now at issue. Id. It is alleged that Defendant wrote checks for premium payments on these policies to make it look like the insured had paid Defendant's company. (Opp'n at 14:11-28.) However, Deutsche Bank allegedly financed these payments, and bought the beneficiary interest in the policy soon after it was issued. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opp'n") at 10:18-25; Plaintiff/Assignee NFP's Separate Statement of Genuine Issues and Material Fact ("SSGI") ¶¶ 6-10.) Key to this motion is whether there is evidence that Defendant knew of and participated

---

[1] This order has been issued for all three related cases between Plaintiff and Defendant: AGLIC v. Fernandez, et al. (CV 09-03198 DDP (RZx)); AGLIC v. Munshi, et al. (CV 08-06439 DDP (RZx));AGLIC v. Khachatourians et al. (CV 08-06408 DDP (RZx)). These cases involve the same issues, claims, and facts, and were not consolidated because a motion to do so was filed after the same trial date was set for each. (See Order Granting Defendant's Motion for Leave to File a First Amended Answer and Vacated the Motion to Consolidate Three Related Cases as Moot.) All citations to the record refer to the 09-03198 case number.

2

in the alleged misrepresentation regarding the source of payment for these policies.

**II. Legal Standard**

Summary judgment shall be granted when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In other words, summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010)(internal quotation marks omitted).

To satisfy its burden at summary judgment, a moving party must produce facts for each element which it has the burden of proof at trial "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted). A moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see also Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and

3

citing <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument- the absence of evidence to support plaintiff's claim")).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

<u>T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations, quotation marks, and emphasis omitted).

At the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and views all evidence and draws all inferences in the light most favorable to the non-moving party. <u>See</u> <u>id.</u> at 630-31 (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)); <u>see also</u> <u>Hrdlicka v. Reniff</u>, 631 F.3d 1044 (9th Cir. 2011); <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 860 n.1 (9th Cir. 2005). Speculative testimony in affidavits and motion papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>Thornhill Publ'g Co., Inc. v. GTE Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979). As the Supreme Court has stated, "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." Id.

## III. Analysis

### A. Fraud

Defendant argues that Plaintiff cannot prove one or more of the essential elements of its fraud claim. (See Motion at 15-20.) The elements of fraud are: "a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Engalla v. Permanente Med. Grp. Inc., 15 Cal. 4th 951, 974, 938 P.2d 903 (1997).

Defendant first argues that there is no triable issue of fact as to whether he made a misrepresentation. To be actionable, a misrepresentation must be false when made. See Edmunds v. Valley Circle Estates, 16 Cal. App. 4th 1290, 1301 (1993). However, "[a] misrepresentation need not be oral; it may be implied by conduct." Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1567, 473-74 (1996).

The checks Defendant wrote for the initial premium payments of the policies at issue in this case constitute the alleged misrepresentation. (Opp'n at 14:11-28.) Plaintiff claims that

5

since Defendant knew AGLIC forbade issuing life insurance policies that were not funded by the insured, the insured's employer, or the insured's family, his checks implicitly asserted that the policies were funded in accordance with AGLIC's rules. Id. Thus, whether Defendant's checks are actionable misrepresentations depends on whether Defendant knew of AGLIC's policy and the alleged fraudulent scheme. Plaintiff has provided evidence of both.

Defendant admits in his deposition that he was "99 percent" sure that he had reviewed a blank AGLIC life insurance application. (Fredericks Decl. Ex. 2 at 195-196.) Tigran Khrlobian, a principal at Prolinks, said he retrieved "copies of every [insurance] company's paperwork" that Prolinks did business with, and had Defendant "go through [it]" so that he could answer agents' questions. Id. at 117-118. AGLIC's applications allegedly contained an "Agent Certification Form," which required agents to certify that the insured, the insured's employer, or the insured's family was paying for the premiums. (See Klappa Decl. Ex. A-D.)

Tigran Khrlobian, a supervisor at Prolinks, testified that on behalf of Prolinks Defendant participated in negotiations with Deutsche Bank that led to the creation of the alleged fraudulent scheme. (Fredericks Decl. Ex. 1 at 31:21-33:7.) Testimony alleges that the scheme involved Deutsche Bank both paying individuals, who Prolinks identified, to take out life insurance policies and funding the premiums on these policies. (Fredericks Decl. Ex. 1 at 47:4-49:5; Fredericks Decl. Ex. 1 at 31:21-33:7; Fredericks Decl. Ex. 2 119:25-121:7.) Defendant admits that he opened the bank accounts that funded the initial policy premium payments. (SSGI ¶ 22.) Plaintiff argues that Defendant opened these accounts to mask

6

the funds' source, Deutsche Bank.  Since the only names that appear on these checks are the Defendant's and a trust in the name of the insured, a reasonable jury could believe Plaintiff's interpretation.  One check's header reads:

> Ricarda Magbual 2007 Insurance Trust
> Brian A Manson Trustee

(Fredericks Decl. Ex. 7.)  A misrepresentation "may be implied by conduct," so a reasonable jury could find that Defendant, Prolinks' in-house counsel, implicitly represented that the funds were not coming from a third party.  <u>Thrifty-Tel</u>, 46 Cal. App. 4th at 473-74.

Next, Defendant argues there is insufficient evidence that he intended to defraud AGLIC.  In a fraud claim, a plaintiff need only show that the defendant had "the intent to *induce reliance."* <u>Gutierrez v. Wells Fargo & Co.</u>, 622 F. Supp. 2d 946, 958 (N.D. Cal. 2009) (emphasis in original).  Intent may "be inferred from the fact that he made the representation with knowledge that plaintiffs would act in reliance thereon." <u>Gagne v. Bertran</u>, 43 Cal. 2d 481, 488, 275 P.2d 15 (1954).  Summary judgment, though, "is rarely proper" on issues concerning "a party's motive or intent." <u>Atkins v. Union Pac. R. Co.</u>, 685 F.2d 1146, 1149 (9th Cir. 1982).  For reasons discussed *supra*, there is a triable issue of fact as to whether Defendant knew of and participated in a scheme to defraud AGLIC.  Defendant seems to argue that even if the life insurance applications at issue in this case conformed to the alleged fraudulent scheme, there is no evidence that he was aware that they were part of the scheme.  (Motion at 17:4-24.)  Therefore, he could not have intended to defraud, because he lacked knowledge that these particular applications were fraudulent.  <u>Id.</u>  However,

7

acting in conformance with a fraudulent scheme is sufficient to create a triable issue of fact as to whether Defendant knew he was committing fraud on particular occasions. <u>Biren v. Equal. Emergency Med. Grp. Inc.</u>, 102 Cal. App. 4th 125, 141(2002)(finding that it is reasonable to infer intent when actions conform to general practice).

Defendant next claims that AGLIC did not justifiably rely on his misrepresentation. (Motion at 18-20.) Justified reliance is the causation element of fraud. <u>Alliance Mortg. Co. v. Rothwell</u>, 10 Cal.4th 1226, 1239(1995). "It is not ... necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct.... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." <u>Engalla</u>, 15 Cal.4th at 976-77 (alterations in original). Causation is almost inappropriate for summary adjudication: "Because of the highly subjective nature of a causation analysis, the Supreme Court of California has instructed that the question whether a party detrimentally relied on the misrepresentation of another party is properly left to a jury." <u>City Solutions, Inc. v. Clear Channel Commc'ns</u>, 365 F.3d 835, 840 (9th Cir. 2004).

Defendant claims that Wells Fargo was listed as the trustee of each policy at issue, and accordingly AGLIC could not have justifiably relied on Defendant's initial premium checks, which allegedly indicate that he was the trustee of the insurance policies. (Motion at 18-20.) However, Plaintiff's claim is broader than Defendant's characterization. As discussed *supra*,

8

Plaintiff claims that Defendant's checks implicitly misrepresented that the policies were issued in accordance with AGLIC's rules regarding third party financing. Since Plaintiff has provided evidence that AGLIC would not have issued the policies had it known about their true source of funding, there is a triable issue of fact as to whether there was justified reliance. (See Plotkin Decl. ¶ 5); see Engalla, 15 Cal.4th at 976-77.

### B. Conspiracy and Aiding and Abetting

Defendant claims that Plaintiff cannot meet the essential elements of both conspiracy and aiding and abetting. (Motion at 11-13.) "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994) (citations omitted). A defendant is liable for aiding and abetting if he "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005). For the reasons the court announced supra in its fraud analysis, there is a triable issue of fact as to whether Defendant knew of and actively participated in a scheme to defraud AGLIC.

Regarding civil conspiracy specifically, Defendant argues that he is not liable for this claim, because the alleged fraud did not violate California insurable interests laws. (Motion at 11-12.)

9

Civil conspiracy does not require a "criminal act" or "statutory violation." Rogers v. Grua, 215 Cal. App. 2d 1, 7 (1963). The California Supreme Court has held that "commission of an actual tort" can "activate" civil conspiracy liability. Applied Equip., 7 Cal. 4th at 511. Thus, Defendant's argument fails.

Defendant also argues that Plaintiff's claims for conspiracy to commit fraud and aiding and abetting fraud must be summarily adjudicated, because Plaintiff's complaint does not seek damages against Defendant for these torts. (Motion at 14-15.) As a preliminary matter, Defendant seems to confuse the standard for summary judgment, which asks whether there is a triable issue of fact, with a motion to dismiss for failure to state a claim, which asks whether a complaint has sufficiently alleged the elements of a claim. Compare Celotex Corp. v. Catrett, 477 U.S. 317, at 327 (1986), with Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In California, each member of a civil conspiracy is jointly liable for all harm done in furtherance of the conspiracy." 5 Witkin, Summary of California Law, Torts § 45, (10th ed. 2005). Similarly, "California law allows for joint liability of aiders and abettors to an intentional tort." Newman v. San Joaquin Delta Cmty. Coll. Dist., 2010 WL 3633737 (E.D. Cal. Sept. 14, 2010). As analyzed in the fraud section supra, Plaintiff seeks damages for, among others, the commissions it paid as a result of issuing the policies that fraudulently violated its rules against third party financing. Since these damages stem from the alleged fraud, conspiracy, and aiding and abetting, there is a triable issue of fact as to damages. Moreover, Defendant had sufficient notice of damages related to the aiding and abetting and conspiracy claims, because

the SAC explicitly sought damages from Defendant's alleged joint tortfeasors.  (SAC at 38:23-27, 41:6-9.)

### C. Agent's Immunity Rule and Sole Actor Rule

Defendant claims that the agent's immunity rule and the single actor rule bar Plaintiff's claims for aiding and abetting fraud and conspiracy to commit fraud.  (See Motion at 7-11.)  The agent's immunity rule states: "When a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire."  Black v. Bank of Am., 30 Cal. App. 4th 1, 6 (1994); see also Sanchez v. Aviva Life & Annuity Co., 2010 WL 2606670, at *7 (E.D. Cal. June 28, 2010) (applying the agent's immunity rule to aiding and abetting claims).  This rule is equivalent to what Defendant calls the single actor rule.  See Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1326 (1996) (describing the agent's immunity rule as similar to the principle that, "an employee acting on behalf of the employer cannot be acting in concert with the employer, as there is in law only a single actor).  The agent's immunity rule is an affirmative defense, so the defendant bears the burden of proving its application.  See CACI 3602.  "[T]he determination of whether an employee has acted within the scope of employment presents a question of fact." 6 Witkin, Summary of California Law, Agency § 176, (10th ed. 2005). Other jurisdictions have persuasively argued that deciding a scope-of-employment issue is "rarely appropriate" for summary adjudication.  Webb v. United States, 24 F. Supp. 2d 608, 614 (W.D. Va. 1998).

As the court found supra in its fraud analysis, there is sufficient evidence to show that Defendant and his supervisor at

11

Prolinks, Tigran Khrlobian, conceptualized and executed a plan to defraud AGLIC. If Defendant and Khrlobian were acting within the scope of their employment at Prolinks, then there can be no conspiracy between them. See Black, 30 Cal. App. 4th at 6. Khrlobian, however, was also an appointed agent with AGLIC. SGI ¶ 6. Khrlobian allegedly signed the Agent's Certification Forms at issue in this case, and they neither indicate nor does his signature suggest that he was signing on Prolinks' behalf. There is no mention either on the form or in his alleged signature that he was signing on behalf of Prolinks. (See Klappa Decl. Exs. A-D.) The only companies mentioned anywhere on the form is AIG and AGLIC- the name "Prolinks" is completely absent. (See id.) Generally, individuals signing on behalf of their corporation are supposed to explicitly indicate as much. 3 Witkin, Summary of California Law, Agency § 198, (10th ed. 2005)(citing numerous California cases). Since no such indication exists on the form, there is a triable issue of fact whether Khrlobian was acting within the scope of his employment while participating in the allegedly fraudulently scheme. The agent's immunity rule only shields a corporate employees because a corporation cannot conspire with itself. See Black, 30 Cal. App. 4th at 6. If Khrlobian was acting outside the scope of his employment (perhaps acting as an individual or as an AGLIC agent) the agent's immunity rule is irrelevant to Defendant's case. See id. A jury will, thus, have to decide the capacity in which Khrlobian signed the Agent's Certification Forms.

**D. Election of Remedies**

Defendant claims that Plaintiff's tort claims must be summarily adjudicated, because Plaintiff has elected the contract

12

remedy of recission. (Motion at 20.) The election of remedies doctrine is an affirmative defense on which Defendant carries the burden. See id. The election of remedies doctrine will prevent a plaintiff from collecting both contract damages and tort damages from a defendant for the same harm. See 5 Witkin, Summary of California Law, Torts § 829, (10th ed. 2005). A federal court in Arkansas has persuasively clarified that, "the election-of-remedies doctrine is designed to prevent double recovery for a single injury, but it does not prevent a party from pursuing multiple claims against multiple parties until full satisfaction is had." GeoVera Specialty Ins. Co. v. Rogers, 2012 WL 931983, at *1 (E.D. Ark. Mar. 20, 2012).

Defendant argues that since each life insurance policy at issue has been rescinded, Plaintiff may not now seek to collect in tort against Defendant. (SGI ¶¶ 35-38; Motion at 20-22.) Defendant, however, did not take out a life insurance policy with AGLIC, and Plaintiff does not seek to rescind any contract that Defendant was a party to. (See Opp'n at 18-19.) The harm Defendant seeks recompense for is the amount it paid in commissions for the policies that violated AGLIC's standards. Id. Defendant cannot escape liability for the harm he allegedly caused simply because Plaintiff has received compensation from different defendants for different harms. See GeoVera Specialty Ins. Co.,2012 WL 931983, at *1.

**IV. Defendant's Objections**

Defendant makes various objections. Almost all of which are moot as they were not material to the court's analysis. Two deserve some discussion, though. First, Defendant objects to the

13

Agent's Certification Forms, which were originally part of the Frederick's declaration, as having an insufficient foundation. This defect was cured, though, when they were resubmitted with the Klappa declaration. (See Klappa Decl.; Klappa Decl. Exs. A-D.) At the October 15, 2012, hearing on Defendant's Motion for Summary Judgment, Defendant made a general objection to the Klappa declaration (and presumably also to the Agent's Certification Forms attached to it), broadly claiming the declaration was inadmissible. However, objections must be "sufficiently specific" to make a judge understand exactly what is objected to and the grounds for that objection. Cont'l Oil Co. v. United States, 184 F.2d 802, 814 (9th Cir. 1950) (ruling that, "[i]t is elementary that objections to offered evidence must be sufficiently specific to bring their point home to the trial judge.") Defendant's objection plainly fails this standard.

Defendant has also objected to the checks that he allegedly wrote for the initial policy premium. Defendant claims that they are inadmissible hearsay to the extent they identify Defendant as a trustee. However, the checks are admissible under the party opponent hearsay exemption. They are also admissible to prove the effect on the listener– namely that AGLIC believed Defendant was a trustee and relied upon that. Defendant also objects that there was insufficient foundation for admitting the checks. However, Defendant testified that the signatures on these checks appear to be his. (Fredericks Decl. Ex. 2 187:13-193:4.)

///
///
///

**V. Conclusion**

    Based on the preceding analysis, the court DENIES Defendant's Motion for Summary Judgment in its entirety.

IT IS SO ORDERED.

Dated: October 24, 2012

                                      DEAN D. PREGERSON
                                      United States District Judge