1

2

3                                                                    O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   AMERICAN GENERAL LIFE        )   Case No. CV 08-06408 DDP (RZx)
     INSURANCE COMPANY,           )
12                                )   **ORDER DENYING PLAINTIFF'S MOTION**
                     Plaintiff,   )   **FOR SUMMARY JUDGMENT AS TO THE**
13                                )   **SECOND AMENDED COMPLAINT**
          v.                      )
14                                )   [Docket No. 144]
     RAZMIK KHACHATOURIANS,       )
15   individually and as a        )
     principal of LIGHTHOUSE      )
16   INSURANCE MARKETING, and     )
     principal of PROLINKS        )
17   INSURANCE SERVICES, INC.;    )
     CONRAD RIOS, an individual;  )
18   EDUARDO LABINPUNO, et al.,    )
                                  )
19                   Defendants.  )
     _____)
20

21        Presently before the court is Defendant Bryan Manson's

22   ("Defendant") Motion for Summary Judgment on Plaintiff/ Assignee

23   National Financial Corp.'s ("Plaintiff") Second Amended Complaint

24   ("SAC").  After reviewing the parties' moving papers, the court

25   DENIES Defendant's Motion in its entirety.

26   **I.  Background**

27        American General Life Insurance Company ("AGLIC") has assigned

28   its claims against Defendant to Plaintiff.  Defendant seeks summary

     judgment on Plaintiff's three claims against him: conspiracy t

1  commit fraud, aiding and abetting fraud, and fraud.  (Defendant's

2  Memorandum in Support of Defendant's Motion for Summary Judgment

3  ("Motion") at 1:12-22; SAC ¶¶ 130-44, 166-70.)[1]  Defendant is a

4  licensed California attorney, who was the in-house counsel for

5  Prolinks.  (Plaintiff/ Assignee National Financial Partners Corps

6  Statement of Genuine Issues ("SGI") ¶¶ 4-5.)  Prolinks is a

7  corporation that submitted life insurance applications to AGLIC,

8  through an intermediary agency.  (SGI ¶¶ 7-8.)  The policies

9  resulting from several such applications are at issue in this case.

10  (SGI ¶¶ 8, 10.)  AGLIC allegedly required the agent issuing a life

11  insurance policy to certify that the person paying for the policy

12  was the insured, the insured's family, or the insured's employer.

13  (See Klappa Decl.; Klappa Decl. Exs. A-D.)  Such a certification

14  was allegedly made for the policies now at issue.  Id.  It is

15  alleged that Defendant wrote checks for premium payments on these

16  policies to make it look like the insured had paid Defendant's

17  company.  (Opp'n at 14:11-28.)  However, Deutsche Bank allegedly

18  financed these payments, and bought the beneficiary interest in the

19  policy soon after it was issued.  (Plaintiff's Memorandum in

20  Opposition to Defendant's Motion for Summary Judgment ("Opp'n") at

21  10:18-25; Plaintiff/Assignee NFP's Separate Statement of Genuine

22  Issues and Material Fact ("SSGI") ¶¶ 6-10.)  Key to this motion is

23  whether there is evidence that Defendant knew of and participated

24

25      [1]This order has been issued for all three related cases between Plaintiff
   and Defendant: AGLIC v. Fernandez, et al. (CV 09-03198 DDP (RZx)); AGLIC v.
26  Munshi, et al. (CV 08-06439 DDP (RZx));AGLIC v. Khachatourians et al. (CV 08-
   06408 DDP (RZx)).  These cases involve the same issues, claims, and facts, and
27  were not consolidated because a motion to do so was filed after the same trial
   date was set for each.  (See Order Granting Defendant's Motion for Leave to File
28  a First Amended Answer and Vacated the Motion to Consolidate Three Related Cases
   as Moot.) All citations to the record refer to the 09-03198 case number.

1    in the alleged misrepresentation regarding the source of payment

2    for these policies.

**II. Legal Standard**

4        Summary judgment shall be granted when a movant "shows that

5    there is no genuine dispute as to any material fact and the movant

6    is entitled to judgment as a matter of law." FED. R. CIV. P.

7    56(a). In other words, summary judgment should be entered "against

8    a party who fails to make a showing sufficient to establish the

9    existence of an element essential to that party's case, and on

10   which that party will bear the burden of proof at trial." Parth v.

11   Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir.

12   2010)(internal quotation marks omitted).

13       To satisfy its burden at summary judgment, a moving party must

14   produce facts for each element which it has the burden of proof at

15   trial "sufficient for the court to hold that no reasonable trier of

16   fact could find other than for the moving party." Calderone v.

17   United States, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis

18   omitted). A moving party without the burden of persuasion "must

19   either produce evidence negating an essential element of the

20   nonmoving party's claim or defense or show that the nonmoving party

21   does not have enough evidence of an essential element to carry its

22   ultimate burden of persuasion at trial." Nissan Fire & Marine Ins.

23   Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000);

24   see also Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)

25   (en banc) ("When the nonmoving party has the burden of proof at

26   trial, the moving party need only point out 'that there is an

27   absence of evidence to support the nonmoving party's case.'")

28   (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and

1   citing <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 532 (9th

2   Cir. 2000) (holding that the *Celotex* "showing" can be made by

3   "pointing out through argument-  the absence of evidence to support

4   plaintiff's claim")).

5           If the party moving for summary judgment meets its initial
            burden of identifying for the court the portions of the
6           materials on file that it believes demonstrate the absence
            of any genuine issue of material fact, the nonmoving party
7           may not rely on the mere allegations in the pleadings in
            order to preclude summary judgment[, but instead] must set
8           forth, by affidavit or as otherwise provided in Rule 56,
            specific facts showing that there is a genuine issue for
9           trial.

10  <u>T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

11  626, 630 (9th Cir. 1987) (internal citations, quotation marks, and

12  emphasis omitted).

13       At the summary judgment stage, the Court does not make

14  credibility determinations or weigh conflicting evidence, and views

15  all evidence and draws all inferences in the light most favorable

16  to the non-moving party.  See <u>id.</u> at 630-31 (citing <u>Matsushita

17  Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

18  (1986)); <u>see also</u> <u>Hrdlicka v. Reniff</u>, 631 F.3d 1044 (9th Cir.

19  2011); <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 860 n.1 (9th

20  Cir. 2005).  Speculative testimony in affidavits and motion papers

21  is insufficient to raise genuine issues of fact and defeat summary

22  judgment.  <u>Thornhill Publ'g Co., Inc. v. GTE Corp.</u>, 594 F.2d 730,

23  738 (9th Cir. 1979).  As the Supreme Court has stated, "[t]he mere

24  existence of a scintilla of evidence . . . will be insufficient;

25  there must be evidence on which the jury could reasonably find for

26  the [non-moving party]."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

27  242, 252 (1986).

28

1   It is not the Court's task "to scour the record in search of a

2   genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,

3   1279 (9th Cir. 1996). Counsel has an obligation to lay out their

4   support clearly. Carmen v. San Francisco Unified Sch. Dist., 237

5   F.3d 1026, 1031 (9th Cir. 2001). The Court "need not examine the

6   entire file for evidence establishing a genuine issue of fact,

7   where the evidence is not set forth in the opposing papers with

8   adequate references so that it could conveniently be found." Id.

9   **III. Analysis**

10   **A. Fraud**

11   Defendant argues that Plaintiff cannot prove one or more of

12   the essential elements of its fraud claim. (See Motion at 15-20.)

13   The elements of fraud are: "a) misrepresentation (false

14   representation, concealment, or nondisclosure); (b) knowledge of

15   falsity (or "scienter"); (c) intent to defraud, i.e., to induce

16   reliance; (d) justifiable reliance; and (e) resulting damage."

17   Engalla v. Permanente Med. Grp. Inc., 15 Cal. 4th 951, 974, 938

18   P.2d 903 (1997).

19   Defendant first argues that there is no triable issue of fact

20   as to whether he made a misrepresentation.  To be actionable, a

21   misrepresentation must be false when made.  See Edmunds v. Valley

22   Circle Estates, 16 Cal. App. 4th 1290, 1301 (1993). However, "[a]

23   misrepresentation need not be oral; it may be implied by conduct."

24   Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559, 1567, 473-74

25   (1996).

26   The checks Defendant wrote for the initial premium payments of

27   the policies at issue in this case constitute the alleged

28   misrepresentation.  (Opp'n at 14:11-28.)  Plaintiff claims that

since Defendant knew AGLIC forbade issuing life insurance policies that were not funded by the insured, the insured's employer, or the insured's family, his checks implicitly asserted that the policies were funded in accordance with AGLIC's rules.  Id.  Thus, whether Defendant's checks are actionable misrepresentations depends on whether Defendant knew of AGLIC's policy and the alleged fraudulent scheme.  Plaintiff has provided evidence of both.

Defendant admits in his deposition that he was "99 percent" sure that he had reviewed a blank AGLIC life insurance application. (Fredericks Decl. Ex. 2 at 195-196.)  Tigran Khrlobian, a principal at Prolinks, said he retrieved "copies of every [insurance] company's paperwork" that Prolinks did business with, and had Defendant "go through [it]" so that he could answer agents' questions.  Id. at 117-118.  AGLIC's applications allegedly contained an "Agent Certification Form," which required agents to certify that the insured, the insured's employer, or the insured's family was paying for the premiums.  (See Klappa Decl. Ex. A-D.)

Tigran Khrlobian, a supervisor at Prolinks, testified that on behalf of Prolinks Defendant participated in negotiations with Deutsche Bank that led to the creation of the alleged fraudulent scheme.  (Fredericks Decl. Ex. 1 at 31:21-33:7.)  Testimony alleges that the scheme involved Deutsche Bank both paying individuals, who Prolinks identified, to take out life insurance policies and funding the premiums on these policies. (Fredericks Decl. Ex. 1 at 47:4-49:5; Fredericks Decl. Ex. 1 at 31:21-33:7; Fredericks Decl. Ex. 2 119:25-121:7.)  Defendant admits that he opened the bank accounts that funded the initial policy premium payments. (SSGI ¶ 22.)  Plaintiff argues that Defendant opened these accounts to mask

6

1   the funds' source, Deutsche Bank.  Since the only names that appear

2   on these checks are the Defendant's and a trust in the name of the

3   insured, a reasonable jury could believe Plaintiff's

4   interpretation.  One check's header reads:

5       Ricarda Magbual 2007 Insurance Trust
        Brian A Manson Trustee

6   (Fredericks Decl. Ex. 7.)  A misrepresentation "may be implied by

7   conduct," so a reasonable jury could find that Defendant, Prolinks'

8   in-house counsel, implicitly represented that the funds were not

9   coming from a third party.  Thrifty-Tel, 46 Cal. App. 4th at 473-

10  74.

11      Next, Defendant argues there is insufficient evidence that he

12  intended to defraud AGLIC.  In a fraud claim, a plaintiff need only

13  show that the defendant had "the intent to *induce reliance.*"

14  Gutierrez v. Wells Fargo & Co., 622 F. Supp. 2d 946, 958 (N.D. Cal.

15  2009) (emphasis in original).  Intent may "be inferred from the

16  fact that he made the representation with knowledge that plaintiffs

17  would act in reliance thereon." Gagne v. Bertran, 43 Cal. 2d 481,

18  488, 275 P.2d 15 (1954).  Summary judgment, though, "is rarely

19  proper" on issues concerning "a party's motive or intent." Atkins

20  v. Union Pac. R. Co., 685 F.2d 1146, 1149 (9th Cir. 1982).  For

21  reasons discussed *supra*, there is a triable issue of fact as to

22  whether Defendant knew of and participated in a scheme to defraud

23  AGLIC.  Defendant seems to argue that even if the life insurance

24  applications at issue in this case conformed to the alleged

25  fraudulent scheme, there is no evidence that he was  aware that

26  they were part of the scheme.  (Motion at 17:4-24.)  Therefore, he

27  could not have intended to defraud, because he lacked knowledge

28  that these particular applications were fraudulent.  Id.  However,

7

1  acting in conformance with a fraudulent scheme is sufficient to

2  create a triable issue of fact as to whether Defendant knew he was

3  committing fraud on particular occasions.  <u>Biren v. Equal.</u>

4  <u>Emergency Med. Grp. Inc.</u>, 102 Cal. App. 4th 125, 141(2002)(finding

5  that it is reasonable to infer intent when actions conform to

6  general practice).

7       Defendant next claims that AGLIC did not justifiably rely on

8  his misrepresentation.  (Motion at 18-20.)  Justified reliance is

9  the causation element of fraud.  <u>Alliance Mortg. Co. v. Rothwell</u>,

10  10 Cal.4th 1226, 1239(1995).  "It is not ... necessary that [a

11  plaintiff's] reliance upon the truth of the fraudulent

12  misrepresentation be the sole or even the predominant or decisive

13  factor in influencing his conduct.... It is enough that the

14  representation has played a substantial part, and so has been a

15  substantial factor, in influencing his decision."  <u>Engalla</u>, 15

16  Cal.4th at 976–77 (alterations in original).  Causation is almost

17  inappropriate for summary adjudication: "Because of the highly

18  subjective nature of a causation analysis, the Supreme Court of

19  California has instructed that the question whether a party

20  detrimentally relied on the misrepresentation of another party is

21  properly left to a jury."  <u>City Solutions, Inc. v. Clear Channel</u>

22  <u>Commc'ns</u>, 365 F.3d 835, 840 (9th Cir. 2004).

23       Defendant claims that Wells Fargo was listed as the trustee of

24  each policy at issue, and accordingly AGLIC could not have

25  justifiably relied on Defendant's initial premium checks, which

26  allegedly indicate that he was the trustee of the insurance

27  policies.  (Motion at 18-20.)  However, Plaintiff's claim is

28  broader than Defendant's characterization.  As discussed *supra*,

1  Plaintiff claims that Defendant's checks implicitly misrepresented
2  that the policies were issued in accordance with AGLIC's rules
3  regarding third party financing.  Since Plaintiff has provided
4  evidence that AGLIC would not have issued the policies had it known
5  about their true source of funding, there is a triable issue of
6  fact as to whether there was justified reliance.  (See Plotkin
7  Decl. ¶ 5); see Engalla, 15 Cal.4th at 976-77.

8     **B. Conspiracy and Aiding and Abetting**

9     Defendant claims that Plaintiff cannot meet the essential
10 elements of both conspiracy and aiding and abetting.  (Motion at
11 11-13.)  "The elements of an action for civil conspiracy are the
12 formation and operation of the conspiracy and damage resulting to
13 plaintiff from an act or acts done in furtherance of the common
14 design."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal.
15 4th 503, 511 (1994) (citations omitted).  A defendant is liable for
16 aiding and abetting if he "(a) knows the other's conduct
17 constitutes a breach of duty and gives substantial assistance or
18 encouragement to the other to so act or (b) gives substantial
19 assistance to the other in accomplishing a tortious result and the
20 person's own conduct, separately considered, constitutes a breach
21 of duty to the third person." Casey v. U.S. Bank Nat'l Ass'n, 127
22 Cal. App. 4th 1138, 1144 (2005). For the reasons the court
23 announced supra in its fraud analysis, there is a triable issue of
24 fact as to whether Defendant knew of and actively participated in a
25 scheme to defraud AGLIC.

26    Regarding civil conspiracy specifically, Defendant argues that
27 he is not liable for this claim, because the alleged fraud did not
28 violate California insurable interests laws.  (Motion at 11-12.)

1    Civil conspiracy does not require a "criminal act" or "statutory

2    violation." <u>Rogers v. Grua</u>, 215 Cal. App. 2d 1, 7 (1963).  The

3    California Supreme Court has held that "commission of an actual

4    tort" can "activate" civil conspiracy liability. <u>Applied Equip.</u>, 7

5    Cal. 4th at 511.  Thus, Defendant's argument fails.

6         Defendant also argues that Plaintiff's claims for conspiracy

7    to commit fraud and aiding and abetting fraud must be summarily

8    adjudicated, because Plaintiff's complaint does not seek damages

9    against Defendant for these torts.  (Motion at 14-15.)  As a

10   preliminary matter, Defendant seems to confuse the standard for

11   summary judgment, which asks whether there is a triable issue of

12   fact, with a motion to dismiss for failure to state a claim, which

13   asks whether a complaint has sufficiently alleged the elements of a

14   claim.  <u>Compare</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, at 327

15   (1986), <u>with</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  In

16   California, each member of a civil conspiracy is jointly liable for

17   all harm done in furtherance of the conspiracy." 5 Witkin, Summary

18   of California Law, Torts § 45, (10th ed. 2005).  Similarly,

19   "California law allows for joint liability of aiders and abettors

20   to an intentional tort." <u>Newman v. San Joaquin Delta Cmty. Coll.</u>

21   <u>Dist.</u>, 2010 WL 3633737 (E.D. Cal. Sept. 14, 2010). As analyzed in

22   the fraud section <u>supra</u>, Plaintiff seeks damages for, among others,

23   the commissions it paid as a result of issuing the policies that

24   fraudulently violated its rules against third party financing.

25   Since these damages stem from the alleged fraud, conspiracy, and

26   aiding and abetting, there is a triable issue of fact as to

27   damages.  Moreover, Defendant had sufficient notice of damages

28   related to the aiding and abetting and conspiracy claims, because

1  the SAC explicitly sought damages from Defendant's alleged joint

2  tortfeasors.  (SAC at 38:23-27, 41:6-9.)

3      **C. Agent's Immunity Rule and Sole Actor Rule**

4      Defendant claims that the agent's immunity rule and the single

5  actor rule bar Plaintiff's claims for aiding and abetting fraud and

6  conspiracy to commit fraud.  (See Motion at 7-11.)  The agent's

7  immunity rule states: "When a corporate employee acts in the course

8  of his or her employment, on behalf of the corporation, there is no

9  entity apart from the employee with whom the employee can

10  conspire."  Black v. Bank of Am., 30 Cal. App. 4th 1, 6 (1994); see

11  also Sanchez v. Aviva Life & Annuity Co., 2010 WL 2606670, at *7

12  (E.D. Cal. June 28, 2010) (applying the agent's immunity rule to

13  aiding and abetting claims).  This rule is equivalent to what

14  Defendant calls the single actor rule.  See Fiol v. Doellstedt, 50

15  Cal. App. 4th 1318, 1326 (1996) (describing the agent's immunity

16  rule as similar to the principle that, "an employee acting on

17  behalf of the employer cannot be acting in concert with the

18  employer, as there is in law only a single actor).  The agent's

19  immunity rule is an affirmative defense, so the defendant bears the

20  burden of proving its application.  See CACI 3602. "[T]he

21  determination of whether an employee has acted within the scope of

22  employment presents a question of fact." 6 Witkin, Summary of

23  California Law, Agency § 176, (10th ed. 2005). Other jurisdictions

24  have persuasively argued that deciding a scope-of-employment issue

25  is "rarely appropriate" for summary adjudication. Webb v. United

26  States, 24 F. Supp. 2d 608, 614 (W.D. Va. 1998).

27      As the court found supra in its fraud analysis, there is

28  sufficient evidence to show that Defendant and his supervisor at

1 | Prolinks, Tigran Khrlobian, conceptualized and executed a plan to
2 | defraud AGLIC.  If Defendant and Khrlobian were acting within the
3 | scope of their employment at Prolinks, then there can be no
4 | conspiracy between them.  See Black, 30 Cal. App. 4th at 6.
5 | Khrlobian, however, was also an appointed agent with AGLIC. SGI ¶
6 | 6.  Khrlobian allegedly signed the Agent's Certification Forms at
7 | issue in this case, and they neither indicate nor does his
8 | signature suggest that he was signing on Prolinks' behalf.  There
9 | is no mention either on the form or in his alleged signature that
10 | he was signing on behalf of Prolinks.  (See Klappa Decl. Exs. A-D.)
11 | The only companies mentioned anywhere on the form is AIG and AGLIC-
12 | the name "Prolinks" is completely absent.  (See id.)  Generally,
13 | individuals signing on behalf of their corporation are supposed to
14 | explicitly indicate as much.  3 Witkin, Summary of California Law,
15 | Agency § 198, (10th ed. 2005)(citing numerous California cases).
16 | Since no such indication exists on the form, there is a triable
17 | issue of fact whether Khrlobian was acting within the scope of his
18 | employment while participating in the allegedly fraudulently
19 | scheme.  The agent's immunity rule only shields a corporate
20 | employees because a corporation cannot conspire with itself. See
21 | Black, 30 Cal. App. 4th at 6. If Khrlobian was acting outside the
22 | scope of his employment (perhaps acting as an individual or as an
23 | AGLIC agent) the agent's immunity rule is irrelevant to Defendant's
24 | case.  See id.  A jury will, thus, have to decide the capacity in
25 | which Khrlobian signed the Agent's Certification Forms.

26 | **D. Election of Remedies**

27 | Defendant claims that Plaintiff's tort claims must be
28 | summarily adjudicated, because Plaintiff has elected the contract

12

1  remedy of recission.  (Motion at 20.)  The election of remedies
2  doctrine is an affirmative defense on which Defendant carries the
3  burden.  See id.  The election of remedies doctrine will prevent a
4  plaintiff from collecting both contract damages and tort damages
5  from a defendant for the same harm.  See 5 Witkin, Summary of
6  California Law, Torts § 829, (10th ed. 2005).  A federal court in
7  Arkansas has persuasively clarified that, "the election-of-remedies
8  doctrine is designed to prevent double recovery for a single
9  injury, but it does not prevent a party from pursuing multiple
10 claims against multiple parties until full satisfaction is had."
11 GeoVera Specialty Ins. Co. v. Rogers, 2012 WL 931983, at *1 (E.D.
12 Ark. Mar. 20, 2012).

13      Defendant argues that since each life insurance policy at
14 issue has been rescinded, Plaintiff may not now seek to collect in
15 tort against Defendant.  (SGI ¶¶ 35-38; Motion at 20-22.)
16 Defendant, however, did not take out a life insurance policy with
17 AGLIC, and Plaintiff does not seek to rescind any contract that
18 Defendant was a party to.  (See Opp'n at 18-19.)  The harm
19 Defendant seeks recompense for is the amount it paid in commissions
20 for the policies that violated AGLIC's standards.  Id.  Defendant
21 cannot escape liability for the harm he allegedly caused simply
22 because Plaintiff has received compensation from different
23 defendants for different harms.  See GeoVera Specialty Ins.
24 Co.,2012 WL 931983, at *1.

25 **IV. Defendant's Objections**

26      Defendant makes various objections.  Almost all of which are
27 moot as they were not material to the court's analysis.  Two
28 deserve some discussion, though. First, Defendant objects to the

13

1   Agent's Certification Forms, which were originally part of the
2   Frederick's declaration, as having an insufficient foundation.
3   This defect was cured, though, when they were resubmitted with the
4   Klappa declaration. (See Klappa Decl.; Klappa Decl. Exs. A-D.)  At
5   the October 15, 2012, hearing on Defendant's Motion for Summary
6   Judgment, Defendant made a general objection to the Klappa
7   declaration (and presumably also to the Agent's Certification Forms
8   attached to it), broadly claiming the declaration was inadmissible.
9   However, objections must be "sufficiently specific" to make a judge
10  understand exactly what is objected to and the grounds for that
11  objection.  Cont'l Oil Co. v. United States, 184 F.2d 802, 814 (9th
12  Cir. 1950) (ruling that, "[i]t is elementary that objections to
13  offered evidence must be sufficiently specific to bring their point
14  home to the trial judge.")  Defendant's objection plainly fails
15  this standard.

16      Defendant has also objected to the checks that he allegedly
17  wrote for the initial policy premium.  Defendant claims that they
18  are inadmissible hearsay to the extent they identify Defendant as a
19  trustee.  However, the checks are admissible under the party
20  opponent hearsay exemption.  They are also admissible to prove the
21  effect on the listener- namely that AGLIC believed Defendant was a
22  trustee and relied upon that.  Defendant also objects that there
23  was insufficient foundation for admitting the checks.  However,
24  Defendant testified that the signatures on these checks appear to
25  be his.  (Fredericks Decl. Ex. 2 187:13-193:4.)
26  ///
27  ///
28  ///

14

**V. Conclusion**

    Based on the preceding analysis, the court DENIES Defendant's Motion for Summary Judgment in its entirety.

IT IS SO ORDERED.

Dated: October 24, 2012

                                DEAN D. PREGERSON
                                United States District Judge